IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL SMITH #K57543, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-CV-713-MAB |
| | ) |
| JUSTIN ENGELAGE, ET AL., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Michael Smith is an inmate in the Illinois Department of Corrections and currently incarcerated at Lawrence Correctional Center. On July 1, 2019, he filed this lawsuit pursuant to 42 U.S.C. § 1983 regarding deprivations of his constitutional rights while he was incarcerated at Menard Correctional Center (Doc. 1; Doc. 14). Specifically, Plaintiff alleged that on March 14, 2019, while on his way to the dining hall, he was asked by "staff" about the location of his line movement partner. Plaintiff responded that some correctional officers inside of the cell house had "turned [his partner] around." The "staff" then "asked why the guy was turned around," and Plaintiff replied, "I don't know, I have no control over that." Plaintiff's reply prompted Defendants Padraig Haithcock-Dukes and Nicolas Sanders to say he was "mouthy" and "like[d] to sue." Defendant Justin Engelage ordered him to cuff up, "since [he] like[d] to talk." Plaintiff's active double cuff permit was ignored and he was taken to a segregation cell. He alleged that he never received dinner, and the segregation cell did not have a blanket, mattress,

pillow, hygiene bag, or running water. He claimed all of these actions were taken in retaliation "for First Amendment activity, Plaintiff's freedom of expression ('c/o's in N2 turned a guy around' . . . 'I don't know, I have no control over that') and request to be properly handcuffed ('I have a active approved double cuff permit' . . . 'can ya'll cuff me properly')" (Doc. 1 at p. 14; *see also id.* at p. 22). Plaintiff wrote numerous grievances. Some were deemed non-emergencies by the warden. Others were purportedly mishandled.

The next day, on March 15th, Plaintiff received a disciplinary ticket written by Defendant Engelage, which Plaintiff claims was "fraudulent." The ticket listed Defendants Haithcock-Dukes and Sanders as witnesses. Plaintiff claimed that he was not allowed to appear at the March 19th hearing on his disciplinary ticket, he was not given staff assistance, he was not allowed to call witnesses, and he was denied an extension of time to prepare for the hearing. The camera footage of the incident that prompted the ticket was not reviewed and was instead destroyed. Grievances he wrote about the disciplinary process were denied. He spent a total of six days in segregation awaiting the outcome of the disciplinary ticket. He was ultimately found guilty and placed on C Grade and lost two months commissary privileges.

Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims:

> **Count 1:** Engelage, Haithcock-Dukes, and Sanders retaliated against Plaintiff in violation of the First Amendment by writing Plaintiff a false disciplinary ticket, denying him his evening meal, and refusing to double cuff Plaintiff.
>
> **Count 2:** Engelage, Haithcock-Dukes, Sanders, Cynthia Meyer, and Frank Lawrence were deliberately indifferent under the Eighth Amendment to

> Plaintiff's conditions of confinement while in segregation.
>
> **Count 3:** Engelage, Haithcock-Dukes, and Sanders were deliberately indifferent under the Eighth Amendment to Plaintiff's serious medical needs by refusing to comply with Plaintiff's medical cuff permit.
>
> **Count 7:** Joshua Schoenbeck and Jason Hart retaliated against Plaintiff in violation of the First Amendment by refusing to call Plaintiff's witnesses at the disciplinary hearing.
>
> **Count 8:** Meyer and Lawrence retaliated against Plaintiff in violation of the First Amendment when they failed to properly respond to Plaintiff's grievances.

(Doc. 14).

## 1. Motion to Reinstate Counts 4 and 5 (Doc. 20)

The threshold order delineated the following claims as Counts 4 and 5:

> **Count 4:** Engelage, Haithcock-Dukes, and Sanders violated Plaintiff's due process rights under the Fourteenth Amendment by issuing Plaintiff a false disciplinary ticket.
>
> **Count 5:** John Doe Reviewing Officer, Schoenbeck, Hart, and Lawrence violated Plaintiff's due process rights by denying him access to video evidence and denying his request to call witnesses at his disciplinary hearing.

(Doc. 14). Count 4 was dismissed because "[s]tanding alone, the receipt of a false disciplinary ticket does not give rise to a due process violation." (Doc. 14, p. 6) (citing *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), *aff'd*, 70 F.3d 117 (7th Cir. 1995). Count 5 was dismissed because even assuming that his procedural safeguards were not followed during Plaintiff's disciplinary hearing, he failed to allege that he suffered the loss of a liberty interest sufficient to trigger due process protections (Doc. 14, pp. 6–7). More specifically, the Court noted that "Plaintiff did not lose any good conduct credit nor

was he placed in segregation as a result of the disciplinary ticket. Although he was demoted to C Grade and lost commissary privileges, those restrictions do not give rise to a liberty interest." (Doc 14, p. 7) (citing *Thomas v. Ramos*, 130 F.3d 754, 762 n. 8 (7th Cir. 1997) (collecting cases). Furthermore, Plaintiff's placement in segregation for six days pending his disciplinary hearing did not give rise to a liberty interest because segregation "imposed for administrative, protective, or investigative purposes," does not implicate the Fourteenth Amendment (Doc. 14, p. 7) (quoting *Townsend v. Fuchs*, 522 F.3d 765, 771–72 (7th Cir. 2008)).

Plaintiff filed a motion asking the Court to reinstate Counts 4 and 5. He reiterated that the ticket was "fraudulently prepared" and "in retaliation for the exercise of a constitutionally protected right" (Doc. 20, p. 2, 3). He also asserted that he "was placed in segregation as a result of the disciplinary ticket"—in other words, for retaliatory and punitive purposes—not for "administrative, protective, or investigative purposes," and therefore he did suffer a loss of a liberty interest that triggered due process protections (Doc. 20, pp. 2, 3). He claimed that the conditions of the segregation cell were "inhumane" and "extremely harsh" (Doc. 20, p. 3).

To the extent that Counts 4 and 5 alleged procedural due process claims, Plaintiff's arguments are unpersuasive, and the Court remains convinced that its analysis outlined in the threshold Order (Doc. 14) is correct. However, the Court believes that Count 4 should be reinstated to set forth a substantive due process claim. Ordinarily, an allegation that a prison guard falsified a disciplinary ticket fails to state a claim for which relief can be granted because "the protection from such arbitrary action is found in the procedures

mandated by due process." *Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2006) (quoting *McPherson,* 188 F.3d at 787); *see also Hanrahan v. Lane,* 747 F.2d 1137, 1141 (7th Cir.1984) ("We find that an allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided."). However, an exception exists—and a substantive due process claim can lie—where the falsified disciplinary ticket is issued in retaliation for the exercise of a constitutional right. *Lagerstrom*, 463 F.3d at 625 (citing *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994)). *See also Washington v. Glucksberg*, 521 U.S. 702, 719 (1997) (substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests," including "the specific freedoms protected by the Bill of Rights").

The exception in *Black* appears to be applicable here. Plaintiff has alleged that Defendants issued him a fraudulent disciplinary report in retaliation for exercising his First Amendment rights. At this stage, that is sufficient to state a claim. Plaintiff's motion for reconsideration will, therefore, be granted in part, and Count 4 is reinstated to assert a claim that Defendants Engelage, Haithcock-Dukes, and Sanders violated Plaintiff's substantive due process rights under the Fourteenth Amendment by issuing him a false disciplinary ticket in retaliation for exercising his First Amendment rights.

The Court notes that Defendants' motion for summary judgment on the issue of exhaustion has been filed and fully briefed (Docs. 38, 39, 41). The reinstatement of Count 4 does not require any supplemental briefing on the motion for summary judgment

because the substantive due process claim is based on the same allegations as the other claims in this case, and therefore the briefing as to those claims will also cover the substantive due process claim.

**2. Third Motion for Leave to File Amended Complaint (Doc. 23)**

Eugene Simpson, Travis Bayler, and Rob Jeffreys were mentioned in the body of Plaintiff's original complaint but they were not identified as Defendants in the caption (Doc. 14, p. 5). Consequently, they were not treated as Defendants and any claims against them were considered dismissed without prejudice (*Id.*). On November 25, 2019, Plaintiff filed a motion seeking leave to file an amended complaint with Simpson, Bayler, and Jeffreys identified in the caption as Defendants (Doc. 23). He also identified and added "Sgt. Royster" as a Defendant (Doc. 23). The proposed amended complaint is 111 pages long. It contains a 29-page handwritten complaint followed by 82 pages of "exhibits."

Rule 15(a)(2) provides that courts should "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The Court can deny a plaintiff leave to amend the complaint, however, if there is undue delay, bad faith, or dilatory motive, if the plaintiff repeatedly failed to cure deficiencies in the complaint, if the opposing party would suffer undue prejudice, or when the amendment would be futile. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 855 (7th Cir. 2017) (quoting *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008)). "The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (quoting *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002)).

### A. Royster

According to the proposed amended complaint, Royster was a correctional officer in north II cell house (p. 3). Plaintiff alleges that on November 7, 2019, Royster removed Plaintiff from the yard line and sent him back to his cell because Plaintiff was "walking alongside three offenders" (as opposed to following the facility rule and walking in pairs) (p. 4; *see also* pp. 37, 38, 51). Consequently, Plaintiff missed yard that day (p. 4). Plaintiff alleges he was removed from the yard line "as retaliation by Sgt. Royster . . . following a request from Plaintiff for his name and badge number" (p. 4). Plaintiff alleges Royster responded to the request by saying "this is a ongoing problem with you . . . I aint Engelage (who is a Defendant in this case), go ahead and try to sue me, good luck proving anything" (p. 4)

The allegations fail to state a claim for retaliation. Even if the Court assumes that asking for Royster's name and badge number was activity protected by the First Amendment, the allegations do not suggest that this activity was "at least a motivating factor in the Defendant['s] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). Rather, the allegations suggest that Royster pulled Plaintiff out of the line and told him to go back to his cell, at which point Plaintiff then asked for Royster's name and badge number, presumably because he wanted to file a grievance. There is no indication that the events occurred in reverse or that Plaintiff had any occasion to ask for Royster's name and badge number *before* Rosyter pulled Plaintiff out of the line. In other words, the alleged First Amendment activity did not occur prior to the purported retaliatory act, and therefore cannot be said to have motivated the

retaliatory act. Furthermore, it does not seem plausible that losing one hour in the yard is the type of "deprivation that would likely deter First Amendment activity in the future." *Gomez,* 680 F.3d at 866.

The allegations also fail to state a claim for a due process violation. The right to due process in prison hinges upon the existence of a protected liberty interest, which requires Plaintiff to show that the punishment he received imposed "an atypical and significant hardship." *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 695 (7th Cir. 2009) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Losing one hour on the yard is not an atypical and significant hardship. *See, e.g., Lekas v. Briley,* 405 F.3d 602, 612 (7th Cir. 2005) (ninety days in disciplinary segregation without any yard access did not violate due process).

In sum, the allegations against Royster fail to state a claim upon which relief may be granted. Consequently, Plaintiff's request to amend his complaint to add Royster as a Defendant is denied.

### B. Eugene Simpson

According to the proposed amended complaint, Eugene Simpson was "assigned to the grievance office" (p. 8). Plaintiff alleges that he submitted grievance #316-4-19 regarding "personal property/staff conduct" with an attached letter dated April 22, 2019 (p. 19). On May 28, 2019, Plaintiff received a copy of Grievance Officer Simpson's recommendation that the grievance be denied (p. 19). Plaintiff alleges that Simpson was "deliberately indifferent to Plaintiff's right to due process" and failed to review all information submitted to the grievance office because Simpson did not attach to his

response a copy of the letter Plaintiff submitted with the grievance, which Plaintiff claims is "required under Due process" (p. 19). Plaintiff claims Simpson is "liable, also, under supervisor liability, [because he] failed to remedy a wrong" (p. 19).

To the extent Plaintiff is alleging that Simpson mishandled his grievance, he fails to state a claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *see also Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). Furthermore, the denial or mishandling of a grievance—standing alone—is not enough to establish deliberate indifference in violation of the Eighth Amendment. *See Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428-29 (7th Cir. 2017); *Owens*, 635 F.3d at 953; *George v. Abdullah*, 507 F.3d 605, 609–10 (7th Cir. 2007). *See also Aguilar v. Gaston-Camara*, 2017 WL 2784561, *4 (7th Cir. 2017) ("reject[ing] the notion that 'everyone who knows about a prisoner's problems will incur § 1983 liability." (quoting *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)).

Plaintiff asserts that Simpson is liable because he knew of a violation of Smith's rights and failed to remedy the wrong" (Doc. 23, p. 2). A prisoner's communication can, under some circumstances, provide sufficient notice to a prison official about an ongoing constitutional violation that requires the official to exercise their authority and to take the needed action to investigate and, if necessary, to rectify the offending condition. *See, e.g., Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). However, a high-level official typically cannot be roped into a constitutional claim merely by denying a grievance concerning a "completed act of misconduct." *George v.*

*Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("[R]eject[ing] an administrative complaint about a completed act of misconduct does not [violate the Constitution]."). Here, Plaintiff mentions various grievances throughout the proposed amended complaint, but he never provided a comprehensive description about what the grievances were about. And the grievance that appears to be at issue here—#316-4-19—is not attached to the proposed amended complaint. So the Court has no way of knowing whether any of the purported misconduct was still ongoing at the time Simpson reviewed the grievance. Therefore, the allegations in the proposed amended complaint are insufficient to state a claim that Simpson acted with deliberate indifference in denying Plaintiff's grievance.

### C.  Travis Bayler & Rob Jeffreys

According to the proposed amended complaint Travis Bayler and Rob Jeffreys "were assigned to the ARB in IDOC at Springfield, Illinois" (p. 8). The only allegations that the Court was able to locate regarding Bayler and Jeffreys was that "[i]nstitutional restrictions and loss of privileges, associated with B-grade status, is directly attributed to the action(s) or lack thereof by Defendants . . . Travis Bayler and Rob Jeffreys" (p. 19) and that Bayler and Jeffreys "believed [Plaintiff] received radio back two days after seg release" (p. 22). It is not clear from these allegations what Plaintiff is alleging Bayler and Jeffreys did wrong. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (explaining that a complaint must "provide 'a short and plain statement of the claim,' which is sufficient to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' including "some indication . . . of time and place." (quoting *Bell Atl. Corp.*, 550 U.S.

544, 555 (2007) and *Thomson v. Washington,* 362 F.3d 969, 970–71 (7th Cir. 2004)).To the extent that their purported misconduct was related to the denial of a grievance, as the Court has already stated, simply ruling against a prisoner on a grievance does not constitute deliberate indifference in violation of the Eighth Amendment. Furthermore, it cannot be inferred from the paltry allegations that Bayler or Jeffreys knew about and ignored an ongoing constitutional violation.

Because Plaintiff has failed to state a claim against Royster, Simpson, Bayler, and Jeffries, his motion for leave to amend is denied.

### 3. Motion for Leave to File Additional Exhibits as Supplement to Complaint (Doc. 30)

Plaintiff asks the Court to allow him to file additional exhibits as a supplement to his complaint. Specifically, he wants to file a letter from the ACLU declining his request for representation (Doc. 30, pp. 1–2, 5). Plaintiff also wants to file an internal memo from Menard reflecting that the grievance office received a grievance dated November 7, 2019 regarding recreational opportunities. This motion is denied.

To begin with, the Court does not accept piecemeal amendments or supplements to a complaint. *See* SDIL-LR 15.1. Additionally, the declination letter from the ACLU has no bearing on the allegations in the complaint or the claims Plaintiff is pursuing. In other words, it's simply not relevant to the complaint; it is only relevant to his request for counsel. As for the memo, it simply reflects that one of Plaintiff's grievances was received by the grievance officer for the second level of review. This memo does not provide any additional facts or allegations relevant to the claims in this case. Given that neither of the

proposed exhibits have any bearing on Plaintiff's claims, the motion to supplement the complaint is denied.

### 4. Second Motion for Counsel (Doc. 21)

"There is no right to court-appointed counsel in federal civil litigation." *Giles v. Godinez*, 914 F.3d 1040, 1052 (7th Cir. 2019) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). But the district court has discretion to recruit an attorney for any litigant who cannot otherwise afford one. *Giles*, 914 F.3d at 1052; 28 U.S.C. § 1915(e)(1). Evaluating whether to recruit counsel is a two-step process. *Giles*, 914 F.3d at 1052. The court must determine whether "(1) the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff's first motion for counsel (Doc. 4), which he filed at the same time he filed his complaint, was denied because the case was still in its infancy (Doc. 14). After the threshold review of the complaint was completed and Defendants were served, Plaintiff renewed his motion for counsel (Doc. 21).

Plaintiff indicates that he contacted two attorneys, the Uptown People's Law Center, and the American Civil Liberties Union (Doc. 4; Doc. 21). Accordingly, it appears that Plaintiff has made a reasonable effort to obtain counsel on his own. That leaves the Court to determine whether Plaintiff appears competent to litigate the case himself. This inquiry requires the Court to look at the factual and legal complexity of the plaintiff's claims. *Pruitt*, 503 F.3d at 655, 656. It also requires the Court to consider "the tasks that

normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial," as well as the litigant's literacy, communication skills, educational level, and litigation experience. *Id.* at 655. In other words, this inquiry is an individualized one based upon the record as a whole, the nature of the claims, and the plaintiff's ability to pursue his claims through all phases of the case, including discovery and trial. *Navejar v. Iyioloa*, 718 F.3d 692, 696 (7th Cir. 2013).

Plaintiff's main contention is that he needs counsel to help him obtain evidence necessary to succeed on his claims (Doc. 21). However, discovery on the merits of Plaintiff's claims has not yet commenced—it has been stayed until the issue of exhaustion is resolved (Doc. 31). Given the quality of Plaintiff's filings thus far and his litigation experience, the Court is convinced that Plaintiff is capable of explaining his efforts to exhaust his administrative remedies and representing himself at this stage of the proceedings. Accordingly, the motion for counsel is denied. If and when the case proceeds to discovery on the merits, Plaintiff may file a new motion for recruitment of counsel if he is having significant difficulty in conducting discovery.

   5. **Second Motion for Preliminary Injunction (Doc. 32)**

In this motion, which was filed on January 27, 2020, Plaintiff alleges that six days prior, he sent a copy of the scheduling order in this case to the law librarian at Menard and asked for weekly access to the law library. Plaintiff seems to think that the law library supervisor notified other prison officials about the scheduling order, which prompted them to give Plaintiff a cellmate on January 22nd "as a form of retaliation and in violation of Plaintiff's constitutional right to conditions of confinement" (Doc. 32, p. 2). At that

point, Plaintiff claims he'd had a cell to himself for approximately six months. Plaintiff claims the cell he was in—cell 343 in the North 2 segregation unit—was not fit for two people. He asked the Court to order Defendant Frank Lawrence, the warden at Menard at that time, to stop any and all forms of harassment and retaliation directed toward Plaintiff, to not put another inmate in cell 343 with Plaintiff, and to require Plaintiff to remain the sole occupant of cell 343 in the North 2 cell house until the pending litigation is concluded or he was granted a requested job assignment.

Defendants filed their response to Plaintiff's motion on February 19, 2020 (Doc. 35). Plaintiff filed his reply brief on February 27, 2020 (Doc. 36). Approximately one week later, Plaintiff notified the Court that he had been transferred from Menard to Lawrence Correctional Center (Doc. 37).

Plaintiff's transfer out of Menard renders his motion for preliminary injunction moot. *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) ("[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." (citing *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995)).

## Conclusion

Plaintiff's Motion to Reinstate Counts 4 and 5 (Doc. 20) is **GRANTED in part and DENIED IN PART**. Count 4 is reinstated to assert a claim that Defendants Engelage, Haithcock-Dukes, and Sanders violated Plaintiff's substantive due process rights under the Fourteenth Amendment by issuing him a false disciplinary ticket in retaliation for exercising his First Amendment rights.

Plaintiff's Third Motion for Leave to File Amended Complaint (Doc. 23) is **DENIED.**

Plaintiff's Motion for Leave to File Additional Exhibits as Supplement to Complaint (Doc. 30) is **DENIED.**

Plaintiff's Second Motion for Counsel (Doc. 21) is **DENIED.**

Plaintiff's Second Motion for Preliminary Injunction (Doc. 32) is **MOOT.**

This matter will proceed on the following claims:

**Count 1:** Engelage, Haithcock-Dukes, and Sanders retaliated against Plaintiff in violation of the First Amendment by writing Plaintiff a false disciplinary ticket, denying him his evening meal, and refusing to double cuff Plaintiff.

**Count 2:** Engelage, Haithcock-Dukes, Sanders, Meyer, and Lawrence were deliberately indifferent under the Eighth Amendment to Plaintiff's conditions of confinement while in segregation.

**Count 3:** Engelage, Haithcock-Dukes, and Sanders were deliberately indifferent under the Eighth Amendment to Plaintiff's serious medical needs by refusing to comply with Plaintiff's medical cuff permit.

**Count 4**: Engelage, Haithcock-Dukes, and Sanders violated Plaintiff's substantive due process rights under the Fourteenth Amendment by issuing him a false disciplinary ticket in retaliation for exercising his First Amendment rights.

**Count 7:** Schoenbeck and Hart retaliated against Plaintiff in violation of the First Amendment by refusing to call Plaintiff's witnesses at the disciplinary hearing.

**Count 8:** Meyer and Lawrence retaliated against Plaintiff in violation of the First Amendment when they failed to properly respond to Plaintiff's grievances.

IT IS SO ORDERED.

DATED: September 8, 2020

                                              <u>s/ Mark A. Beatty</u>
                                              **MARK A. BEATTY**
                                              **United States Magistrate Judge**